Receipt #057931

ORIGINAL

ECF

FILED
JUN 2 4 2003
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**TRAVELERS CASUALTY AND SURETY OF AMERICA,**

**Plaintiff,**

**vs.**

**UNITED STATES OF AMERICA, DEPARTMENT OF AGRICULTURE,**

**Defendant.**

**No.:** 03-1548C

**Judge:** ______

**COMPLAINT**

The Plaintiff, Travelers Casualty and Surety of America (hereinafter "Contractor") complains of the Defendant herein as follows:

**JURISDICTIONAL ALLEGATIONS**

1. The Contractor is a corporation in the business of providing surety bonds and construction services.

2. The Defendant, the United States of America (hereinafter "Government"), is a Defendant in this action by virtue of the actions and omissions of its agency and instrumentality, the United States Department of Agriculture (hereinafter "USDA").

3. This case involves construction of the USDA Vegetable Laboratory in Charleston, SC under Contract No. 50-3K15-9-0300 (the "Contract"). The Contract was originally awarded to Adams Construction Company, Inc., on or around February 29, 1999. Adams agreed to a termination and Travelers took over the contract under the terms of its performance bond issued in connection with the Contract.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609.

5. The Contractor has timely and properly pursued and exhausted its administrative remedies prior to instituting this action.

## GENERAL FACTUAL ALLEGATION

6. This Complaint involves a claim for additional costs and an extension of time for "mold remediation" directed by the USDA.

7. The USDA contends that the completion date for the contract is on or around September 19, 2001.

8. By letter dated April 26, 2002, the USDA advised Travelers that the USDA could not occupy the building because, among other things, there was toxic black mold in the wall cavities of the building.

9. By letter dated May 21, 2002, Travelers advised the USDA that allegations of toxic mold appeared to be a blatant attempt to avoid liability as a result of the USDA's failure to accept the building as substantially complete and based on an expert review of the USDA's analysis "the projection to human hazard or risk [of black toxic mold] is not supported by the data."

10. At the monthly project progress meeting held on June 6, 2002, Travelers advised the USDA that it did not believe it was responsible for mold remediation and if the USDA wanted the work to be completed, it would be done at an additional cost under the Changes Clause.

11. By letter dated July 31, 2002, the USDA provided a nine-page specification for mold remediation and stated that "Travelers has the obligation, pursuant to the contract, to provide

a complete, and usable, (suitable for both Research and Administrative operations) facility. In order to meet this contractual obligation, Travelers must remedy the mold problem."

12. By letter dated August 19, 2002, Travelers advised the USDA that the mold issue was a USDA problem and that the work was considered a change and would not be completed without a change order or direction.

13. By letter dated August 30, 2002, Travelers submitted Change Order Request 137 for the mold remediation, including a mold remediation plan proposed by Travelers.

14. By letter dated September 10, 2002, the USDA rejected Change Order Request 137 stating that remediation of the mold was required under Section H.7 and H.3 of the contract and advised Travelers that it was Travelers' responsibility to remediate the mold.

15. By letter dated September 12, 2002, Travelers advised the USDA that neither Section H.7 nor H.3 were applicable and requested the USDA reconsider its position and issue an appropriate change.

16. At a meeting with the USDA on September 27, 2002, Travelers again provided a copy of the alternative procedure for remediating the mold previously provided by letter dated August 30, 2002 and Change Order Request 137. Travelers requested the USDA review the procedure and advise whether it was acceptable and, once approval was provided, Travelers would advise what action would be taken.

17. By letter dated October 2, 2002, the USDA rejected the mold remediation plan submitted by Travelers.

18. By letter dated October 16, 2002, Travelers requested the USDA provide direction on how the USDA wanted the mold to be remediated and to provide the appropriate change.

19. By letter dated December 1, 2002, Travelers advised the USDA that it intended to begin mold remediation on or around December 16, 2002 and that Travelers reserved all rights regarding the mold remediation issue.

20. By letter dated December 13, 2002, the USDA advised Travelers that the mold remediation plan provided by Travelers was unacceptable and rejected. The USDA further stated that "no work shall commence on the remediation of the mold until a revised plan is received and approved."

21. By letter dated December 16, 2002 marked "**URGENT**," Travelers advised the USDA that mold remediation was scheduled to begin on December 17, 2002 and that the mold remediation would be performed in accordance with the specifications provided by the USDA by letter dated July 31, 2002.

22. By letter dated December 16, 2002, the USDA reiterated that "**[N]o work shall commence on the remediation of the mold in the U.S. Vegetable Laboratory, Charleston, South Carolina, until your revised Microbial Mold Remediation (Abatement) Plan is received, reviewed and approved by this office**." (emphasis in original).

23. By letter dated December 17, 2002, Travelers advised that the mold remediation would be performed in accordance with the specifications provided by the USDA by letter dated July 31, 2002. A copy of the specifications originally provided by the USDA was included for review and approval by the USDA.

24. By letter dated December 20, 2002, the USDA approved the mold remediation plan provided by Travelers with its December 17, 2002 letter, which was exactly the same mold remediation plan provided by the USDA to Travelers by letter dated July 31, 2002.

25. By letter dated January 2, 2003, Travelers advised the USDA that it would perform the mold remediation in accordance with plan originally provided by the USDA; however, no work would begin until the USDA had established a commencement date for the mold remediation.

26. Travelers completed the mold remediation. Out of the twelve locations identified for mold remediation by the USDA, visible mold was found in only three locations.

27. By letter dated March 28, 2003, Travelers submitted a claim in the amount of $52,604.64 for the cost of mold remediation and the time necessary to accomplish the work. (Exhibit 1). Travelers contended that the mold remediation was a change to the contract under the Changes Clause, there was no contractual or legal requirement for remediation of the mold, the USDA directed the contractor on what work was to be performed, how to perform the work and when to perform the work. Alternatively, Travelers contended that the USDA was liable for the remediation under the Inspection Clause, FAR 52.236(h) since visible mold was found in only three of the twelve locations designated by the USDA, and the USDA hygienist directed Travelers to cease work in the other areas.

28. By letter dated May 27, 2003, the USDA denied the claim in its entirety alleging that the work was required under Section I of the contract, FAR 52.246-12. (Exhibit 2).

29. The contract documents do not include any requirements relating to mold, mold remediation, the amounts of mold that may be permitted in construction, normal accepted mold levels, or any other matters relating to mold or the existence of mold in construction of the building.

30. Mold is naturally occurring and is normally found in newly constructed buildings.

31. There are no standard industry practices relating to the amount of mold that may or may not be found in connection with new construction.

32. The building was constructed in accordance with the plans and specifications provided by the USDA.

33. There are no government standards on the amount of mold or the type of mold that may exist in connection with new construction of buildings.

34. In April of 2002 when the USDA advised Travelers that it was concerned with mold in the building, the mold levels in the building were less than the mold levels outside the building.

**FOR A FIRST CAUSE OF ACTION**
(Breach of Contract/Modification of Contract)

35. The allegations set forth in the preceding paragraphs are repeated and realleged as fully as if said matters were set forth herein verbatim.

36. The USDA modified and/or breached the aforesaid Contract in among other ways by directing Travelers to remediate the mold, directing Travelers on how to remediate the mold and directing Travelers on when to remediate the mold.

37. Alternatively, since mold was found in only three of the twelve locations where mold remediation was directed by the USDA, the USDA is liable for the cost of remediation in the other locations pursuant to FAR 52.236(h).

38. As a direct and proximate result of the aforesaid modification and/or breach of the Contract, Travelers has incurred actual damages of $52,604.64 and is entitled to interest and attorney's fees as may be allowed at law.

**WHEREFORE,** the Plaintiff prays for judgment against the Government for actual damages of $52,604.64, an extension to the contract performance period until the mold remediation was completed and accepted by the Government, interest, attorney's fees as may be provided at law, the costs of this action and such other and further relief as this Court deems just and proper.

**PEDERSEN & SCOTT, P.C.**

William A. Scott
775 St. Andrews Blvd.
Charleston, South Carolina 29407
(843) 556-5656
ATTORNEY FOR PLAINTIFF

Dated this 23rd day of June, 2003.

Travelers

One Tower Square
Hartford, CT 06183

VIA FAX AND U.S. MAIL

John Scarpellino
Manager
Travelers Bond
One Tower Square, 14CZ
Hartford, CT 06183
Phone:860-277-5295
Fax:860-277-5722
JScarpe1@Travelers.com

March 28, 2003

Ms. Marva Huggins, Contracting Officer
US Dept. of Agriculture
5601 Sunnyside Avenue
Mail Stop 5124
Beltsville, MD 20705-5100

**RE: CLAIM - REQUEST FOR CONTRACTING OFFICER'S FINAL DECISION - Mold remediation**
**Contract No. 50-3K15-0300**
**USDA Vegetable Laboratory**

Dear Ms. Huggins:

Pursuant to the Contract Disputes Act and the disputes clause of the contract, the contractor, Travelers Casualty & Surety Company of America (Travelers), hereby demands payment of $52,604.64 as set forth in the attached letter from Alcon dated March 21, 2003, interest, and an extension in the contract completion date until the building was accepted as substantially complete. The claim is for the costs of mold remediation as directed by the USDA and the time necessary to accomplish the work. The mold remediation is a change to the Contract under the Changes Clause. There is no contractual or legal requirement for remediation of the mold and the USDA directed the contractor on what work to perform, how to perform the work and when to perform the work. Alternatively, the USDA is liable for the remediation costs under the Inspection Clause, FAR 52.236(h) since visible mold was found in only 4 of the 12 locations designated by the USDA, and the USDA hygienist directed Alcon to cease work in those areas. This matter is considered in dispute based on direction by the USDA and its refusal to issue a change order compensating the contractor for the work. A Final Contracting Officer's Decision is requested on each issue presented in this claim. Your response is requested within sixty (60) days as required by the Contract Disputes Act. Since this claim is for less than $100,000.00, no certification is required.

Your prompt and fair evaluation of this claim is appreciated.

With regards,

John Scarpellino
Travelers

cc: John Cirone, Alcon

EXHIBIT
1

ALCON
GENERAL CONTRACTOR
CONSTRUCTION MANAGER
DESIGN BUILD

*Chairman and CEO*
Mr. L. D. Bryan III, P.E.

*South Region President and COO*
Mr. Robert Thompson

*North Region President and COO*
Mr. Anthony Sklanka, P.E.

*General Superintendent Executive Vice President*
Mr. Roy L. Newell

*Vice President Commercial/Institutional*
Mr. J.M. Hunkele, Sr.

*Vice President Business Development*
Ms. Sharron Bryan Washburn

*Vice President / Director Healthcare Construction*
Mr. Patrick W. Etheridge

*Vice President Corporate Training*
Mr. John C. Cirone

*Vice President Estimating*
Mr. J. Ken Craft

*Vice President Municipal Utilities*
Mr. Richard G. Nudi

*Vice President Industrial/ PEMB*
Mr. C.B. Spicer

*Chief Financial Officer*
Mr. Chip Keith

*Director Corporate Safety*
Mr. Ron Fennell

*Director Multi Family*
Ms. Donna Bryan

*Director MIS*
Mr. Erick Magowan

March 21, 2003

Traveler's Casualty
One Constitution Plaza
Bond 14-CZ
Hartford, CT 06103
Attn: John Scarpellino

Re: U. S. Vegetable Lab
Sub: Mold Abatement

Dear John:

Find attached the final costs for the mold remediation performed at the U. S. Vegetable Lab. This work was done at the direction of the USDA and is/was not part of the scope of work but a change to the contract. Please issue these costs to the USDA for reimbursement.

Please note that a report from the abatement subcontractor is forth coming and it will show that visual mold was found in very few of the areas where they were directed to perform abatement.

If you have any questions, please call me.

Very truly yours,

ALCON ASSOCIATES, INC.

John C. Cirone
DPM/QCM

JCC/jdc
encl.
cc: Job File
Bill Scott
Don Bryan

**Alcon Associates, Inc.**
South Region Office
P.O. Box 3410 (31706)
201 Baldwin Drive
Albany, GA 31707
Phone: 229-432-7411
Fax: 229-434-1494

# Mold Remediation Recap

March 20, 2003

| | | |
|---|---|---|
| Abatement Subcontract Cost | | $33,168.08 |
| Alcon Labor to Repair and Refinish | | $ 7,526.81 |
| Materials and Equipment to Repair and Refinish | | $ 2,780.02 |
| | Sub-total | $43,474.91 |
| Overhead 10% | | $ 4,347.49 |
| | Sub-total | $47,822.40 |
| Fee 10% | | $ 4,782.24 |
| | TOTAL | $52,604.64 |

BELFOR
INRECON

FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: John Ceroni | FROM: Stewart Clark |
| COMPANY: ALCON | DATE: MARCH 19, 2003 |
| FAX NUMBER: 229-434-1494 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 229-432-7411 | SENDER'S REFERENCE NUMBER: |
| RE: US Vegetable Lab | YOUR REFERENCE NUMBER: |

☐ URGENT X FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

John,

Attached you will find the invoice coversheet for the mold remediation that BELFOR USA performed at the above referenced loss. Please review, and let me know if there are any questions. I will be sending the original billing, with the backup materials within the next few days.

Also, you had indicated that there was a question with regards to visible mold that we found in the building/s. According to my field staff that performed the actual remediation, they saw visible mold in 4 of the 12 areas that we cleaned. They were located in:

Building A
- Room 231
- 2 Areas in hallway near rooms 229 and 231

Building C
- Stairwell near exterior wall.

Again, please call if there are any questions.

Thank you,

STEWART CLARK
492-A LA MESA RD. MT.PLEASANT, SC 29464
PHONE: (843) 884-4100 TOLL FREE: (888) 421-4119 FAX: (843) 884-2181

BELFOR
INRECON

March 19, 2003

US Vegetable Lab
2700 Savannah Hwy.
Charleston, SC

RE: Emergency Mold Remediation

| | *INVOICE # 3210-2-10352-1 | |
|---|---|---|
| LABOR: | (*see attached) | $11,283.00 |
| MATERIAL VENDORS: | Jon-Don | $554.39 |
| | Home Depot | $1,230.24 |
| | DP Engineering Inc. | $843.20 |
| EQUIPMENT: | (*see attached) | $7,200.00 |
| SUPPLIES: | (*see attached) | $4,035.60 |
| | Subtotal | $25,146.43 |
| | 10% Overhead | $2,514.64 |
| | Subtotal | $27,661.07 |
| | 10% Profit | $2,766.11 |
| | | **$30,427.18** |
| HOTEL: | Red Roof Inn | $570.90 |
| ADMIN. SUPPORT: | (Jack Keheley - 70 hours x $31.00) | $2,170.00 |
| | **GRAND TOTAL** | **$33,168.08** |

03-20-2003 10:53 ALCON ASSOCIATES, INC. PAGE: 1
BY: RAH JOB COST DISTRIBUTION JC\RJCDISTR

PERIODS: January 2003 thru March 2003 Job: 3000 COMPLETE PROJECTS - 2002

| DIV COST CODE | - CLIENT/VENDOR -- NUMBER DESCRIPTION | JRNL ENTRY/ INVOICE | POSTING JOURNAL | ACCTING PERIOD | G/L ACCOUNT | ---- POSTED AMOUNT ---- BILLINGS | COSTS |
|---|---|---|---|---|---|---|---|
| 3 COMPLETED PROJECTS | | | | | | | |
| 0011 VEGGIE LAB | | | | | | | |
| .00 B | W/E-01/03/03 01/03/03 | | PR-1563 | Jan 03 | 50502 | | 11.76 |
| B | W/E-01/31/03 01/31/03 | | PR-1574 | Jan 03 | 50502 | | 125.29 |
| B | W/E 02/07/03 02/07/03 | | PR-1577 | Feb 03 | 50502 | | 171.15 |
| B | W/E 02/14/03 02/14/03 | | PR-1581 | Feb 03 | 50502 | | 127.69 |
| B | W/E 02/21/03 02/21/03 | | PR-1585 | Feb 03 | 50502 | | 399.34 |
| B | w/e 03/07/03 03/07/03 | | PR-1591 | Mar 03 | 50502 | | 4.79 |
| | | | B BURDEN Cost Type Subtotal | | | | 840.04 |
| L | W/E 1-31 | 3930 | GL-3930 | Jan 03 | 50500 | | 340.00 |
| L | W/E-01/03/03 01/03/03 | | PR-1563 | Jan 03 | 50500 | | 80.00 |
| L | W/E-01/31/03 01/31/03 | | PR-1574 | Jan 03 | 50500 | | 864.13 |
| L | W/E 02/07/03 02/07/03 | | PR-1577 | Feb 03 | 50500 | | 1,171.63 |
| L | W/E 02/14/03 02/14/03 | | PR-1581 | Feb 03 | 50500 | | 851.88 |
| L | W/E 02/21/03 02/21/03 | | PR-1585 | Feb 03 | 50500 | | 2,739.13 |
| L | w/e 03/07/03 03/07/03 | | PR-1591 | Mar 03 | 50500 | | 32.00 |
| | | | L LABOR Cost Type Subtotal | | | | 6,078.77 |
| O | W/E 2-28 02/28/03 | | PR-1584 | Feb 03 | 50510 | | 208.00 |
| O | W/E 3-14 03/14/03 | | PR-1590 | Mar 03 | 50510 | | 400.00 |
| | | | O OVERHEAD Cost Type Subtotal | | | | 608.00 |
| 0011 VEGGIE LAB Cost Code Subtotal | | | | | | | 7,526.81 |

Cost Type Summary For Job: 3000 COMPLETE PROJECTS - 2002

| TYPE | DESCRIPTION | BILLINGS | COSTS |
|---|---|---|---|
| L | LABOR | | 6,078.77 |
| B | BURDEN | | 840.04 |
| O | OVERHEAD | | 608.00 |
| | Cost Type Total: | | 7,526.81 |

LABOR TO REPAIR & REFINISH

03-20-2003 10:53 ALCON ASSOCIATES, INC. PAGE: 1
BY: RAH SUBLEDGER DISTRIBUTION JC\RSUBLED

PERIODS: January 2003 thru March 2003 S/L: COMPLETE COST ON COMPLETE PROJECTS

| DIV | COST CODE | - CLIENT/VENDOR -- NUMBER | DESCRIPTION | JRNL ENTRY/ INVOICE | POSTING JOURNAL | ACCTING PERIOD | G/L ACCOUNT | --- POSTED AMOUNT --- DEBITS | CREDITS |
|---|---|---|---|---|---|---|---|---|---|
| 3 | | | PROJECTS COMPLETE - 2002 | | | | | | |
| | 2011 | | VEGGIE LAB | | | | | | |
| | .00 0 | | DEP 1-17 REGIONS PHBE - M GOSA 3968 | | GL-3968 | Jan 03 | 50515 | | 75.00 |
| | 0 | 22984 | JAMIE CHAMBLESS | 13103 | PJ-15258 | Jan 03 | 50515 | 60.00 | |
| | 0 | 24710 | CONTINENTAL LIGHTNING PROTECT | 512 | PJ-15062 | Jan 03 | 50515 | 472.50 | |
| | 0 | 51979 | LEWIS FALLIN | 11003 | PJ-14959 | Jan 03 | 50515 | 80.00 | |
| | 0 | 51979 | LEWIS FALLIN | 11703 | PJ-15050 | Jan 03 | 50515 | 100.00 | |
| | 0 | 51979 | LEWIS FALLIN | 11703 | PJ-15190 | Jan 03 | 50515 | | 100.00 |
| | 0 | 51979 | LEWIS FALLIN | 12303 | PJ-15066 | Jan 03 | 50515 | 104.72 | |
| | 0 | 51979 | LEWIS FALLIN | 12403 | PJ-15121 | Jan 03 | 50515 | 20.00 | |
| | 0 | 51979 | LEWIS FALLIN | 13103 | PJ-15215 | Jan 03 | 50515 | 80.00 | |
| | 0 | 51979 | LEWIS FALLIN | 11703CORR | PJ-15154 | Jan 03 | 50515 | 100.00 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065500682450 | PJ-15140 | Jan 03 | 50515 | 39.86 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065501483148 | PJ-15213 | Jan 03 | 50515 | 20.39 | |
| | 0 | 56150 | MBNA AMERICA | 3868010203 | PJ-15057 | Jan 03 | 50515 | 2,073.72 | |
| | 0 | 56150 | MBNA AMERICA | 3868020303 | PJ-15378 | Jan 03 | 50515 | | 59.19 |
| | 0 | 57930 | MESCON'S INC. | 045007 | PJ-15062 | Jan 03 | 50515 | 160.10 | |
| | 0 | 61520 | NATIONAL EXTERMINATORS | 13586 | PJ-15095 | Jan 03 | 50515 | 300.00 | |
| | 0 | 67590 | PROJECT CONSULTING SV INC | 11114 | PJ-15341 | Jan 03 | 50515 | 1,229.69 | |
| | 0 | 74446 | SEA ISLAND CUSTOM HARDWOOD | 011903 | PJ-15134 | Jan 03 | 50515 | 2,251.80 | |
| | 0 | 80139 | SUNBELT RENTALS INC. | 754654 | PJ-15124 | Jan 03 | 50515 | 309.79 | |
| | 0 | 83197 | UNITED RENTALS | 30608966-001 | PJ-15096 | Jan 03 | 50515 | 149.45 | |
| | 0 | 10306 | ACTION DISPOSAL SERVICES, INC. | 15172 | PJ-15353 | Feb 03 | 50515 | 270.32 | |
| | 0 | 10450 | AEGIS ENVIRONMENTS | 923163 | PJ-15687 | Feb 03 | 50515 | 150.00 | |
| | 0 | 12975 | BP PAYMENT PROCESSING CENTER | 770170280302 | PJ-15426 | Feb 03 | 50515 | 259.95 | |
| | 0 | 23165 | CHARLES WARD | 21403 | PJ-15386 | Feb 03 | 50515 | 75.00 | |
| | 0 | 23165 | CHARLES WARD | 22103 | PJ-15459 | Feb 03 | 50515 | 75.00 | |
| | 0 | 23165 | CHARLES WARD | 22303 | PJ-15537 | Feb 03 | 50515 | 66.00 | |
| | 0 | 23165 | CHARLES WARD | 22803 | PJ-15551 | Feb 03 | 50515 | 60.00 | |
| | 0 | 23165 | CHARLES WARD | 22803 | PJ-15584 | Feb 03 | 50515 | | 60.00 |
| | 0 | 27274 | DAVIS ROOFING & | 2375 | PJ-15430 | Feb 03 | 50515 | 1,742.33 | |
| | 0 | 30454 | DUN & BRADSTREET | 5645168-001 | PJ-15470 | Feb 03 | 50515 | 130.00 | |
| | 0 | 30459 | DUNNE ELECTRIC | 4 | PJ-15470 | Feb 03 | 50515 | 265.28 | |
| | 0 | 33301 | FLEET FUELING | 9607588 | PJ-15682 | Feb 03 | 50515 | 118.40 | |
| | 0 | 36400 | GILES BUILDERS SUPPLY CO | 267284 | PJ-15701 | Feb 03 | 50515 | 30.84 | |
| | 0 | 42400 | KENNETH HOLTON | 21403 | PJ-15386 | Feb 03 | 50515 | 75.00 | |
| | 0 | 45615 | JOHN C CIRONE | 22803 | PJ-15551 | Feb 03 | 50515 | 81.31 | |
| | 0 | 51979 | LEWIS FALLIN | 2703 | PJ-15292 | Feb 03 | 50515 | 100.00 | |
| | 0 | 51979 | LEWIS FALLIN | 21403 | PJ-15386 | Feb 03 | 50515 | 100.00 | |
| | 0 | 51979 | LEWIS FALLIN | 22103 | PJ-15459 | Feb 03 | 50515 | 100.00 | |
| | 0 | 51979 | LEWIS FALLIN | 22403 | PJ-15434 | Feb 03 | 50515 | 119.34 | |
| | 0 | 51979 | LEWIS FALLIN | 22803 | PJ-15537 | Feb 03 | 50515 | 100.00 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065503585087 | PJ-15487 | Feb 03 | 50515 | 4.25 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065503785285 | PJ-15488 | Feb 03 | 50515 | 3.49 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065504285704 | PJ-15689 | Feb 03 | 50515 | 34.46 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065504285734 | PJ-15488 | Feb 03 | 50515 | 54.46 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065504385920 | PJ-15488 | Feb 03 | 50515 | 178.44 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065504986390 | PJ-15488 | Feb 03 | 50515 | 171.57 | |
| | 0 | 53100 | BANK OF AMERICA-OVERNIGHT | 065505086539 | PJ-15488 | Feb 03 | 50515 | 22.71 | |

03-20-2003 10:53 ALCON ASSOCIATES, INC. PAGE: 2
BY: RAH SUBLEDGER DISTRIBUTION JC\RSUBLED

PERIODS: January 2003 thru March 2003 S/L: COMPLETE COST ON COMPLETE PROJECTS

| DIV | COST CODE | | - CLIENT/VENDOR -- NUMBER | DESCRIPTION | JRNL ENTRY/ INVOICE | POSTING JOURNAL | ACCTING PERIOD | G/L ACCOUNT | --- POSTED AMOUNT --- DEBITS | CREDITS |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 | | | | PROJECTS COMPLETE - 2002 | | | | | | (Continued) |
| | 0011 | | | VEGGIE LAB | | | | | | (Continued) |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065505186584 | PJ-15488 | Feb 03 | 50515 | 16.41 | |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065505186601 | PJ-15488 | Feb 03 | 50515 | | 12.06 |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065505586976 | PJ-15488 | Feb 03 | 50515 | 9.43 | |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065531878191 | PJ-15488 | Feb 03 | 50515 | 26.52 | |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065534680559 | PJ-15488 | Feb 03 | 50515 | 8.43 | |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065535180895 | PJ-15488 | Feb 03 | 50515 | 228.63 | |
| | | O | 53100 | BANK OF AMERICA-OVERNIGHT | 065535281073 | PJ-15488 | Feb 03 | 50515 | 42.30 | |
| | | O | 56150 | MBNA AMERICA | 5346021003 | PJ-15538 | Feb 03 | 50515 | 7.44 | |
| | | O | 61544 | NATIONAL WELDERS SUPPLY CO INC | 11613367 | PJ-15473 | Feb 03 | 50515 | 12.58 | |
| | | O | 62418 | NEW SOUTH SUPPLY, LLC. | 199361 | PJ-15502 | Feb 03 | 50515 | 148.50 | |
| | | O | 65526 | PENHALL COMPANY | 36380 | PJ-15513 | Feb 03 | 50515 | 350.00 | |
| | | O | 67590 | PROJECT CONSULTING SV INC | 11152 | PJ-15530 | Feb 03 | 50515 | 715.00 | |
| | | O | 80139 | SUNBELT RENTALS INC. | 779216 | PJ-15556 | Feb 03 | 50515 | 77.65 | |
| | | O | 83192 | UNITED PARCEL SERVICE | 387884073 | PJ-15404 | Feb 03 | 50515 | 20.45 | |
| | | O | 83192 | UNITED PARCEL SERVICE | 387884083 | PJ-15471 | Feb 03 | 50515 | 14.89 | |
| | | O | 83192 | UNITED PARCEL SERVICE | 387884093 | PJ-15626 | Feb 03 | 50515 | 1.16 | |
| | | O | 10306 | ACTION DISPOSAL SERVICES, INC. | 18208 | PJ-15691 | Mar 03 | 50515 | 155.62 | |
| | | O | 51979 | LEWIS FALLIN | CELL-203 | PJ-15719 | Mar 03 | 50515 | 123.60 | |
| | 0011 | | | VEGGIE LAB Cost Code Subtotal | | | | | 13,898.78 | 306.25 |
| 3 | | | | PROJECTS COMPLETE - 2002 Division Subtotal | | | | | 13,898.78 | 306.25 |
| COMPLETE - COST ON COMPLETE PROJECTS S/L Total | | | | | | | | | 13,898.78 | 306.25 |

Cost Type Summary For S/L: COMPLETE COST ON COMPLETE PROJECTS

| TYPE | DESCRIPTION | DEBITS | CREDITS |
|---|---|---|---|
| O | OVERHEAD | 13,898.78 | 306.25 |

TOTAL MATERIALS & EQUIPMENT
27800.02

United States Dep
Research, Educ
Agricultural R

Post-it® Fax Note 7671 | Date 5/28/03 | # of pages 3
To John Cirone | From John Scarpellino
Co./Dept. Alcon | Co.
Phone # | Phone #
Fax # 229 434 1494 | Fax #

Post-it® Fax Note 7671 | Date 5/29/03 | # of pages 3
To Bill Scott | From John Scarpellino
Co./Dept. Robinson & Scott | Co. Travelers
Phone # | Phone #
Fax # 843 556 5635 | Fax #
P.S. I requested the other 7 pages
T 301 504-1171

May 27, 2003

IN REPLY:
REFER TO: Contract No. 50-3K15-9-0300
U.S. Vegetable Laboratory, SAA
Charleston, South Carolina

Mr. John Scarpellino
Travelers Casualty & Surety Co. of America
One Tower Square, 3PB
Hartford, CT 06183

Dear Mr. Scarpellino:

This letter is in response to your letter dated March 28, 2003, regarding your claim in the amount of $52,604.64 for the costs of mold remediation and the time necessary to accomplish the work.

Travelers and its Agent, Alcon Associates, Inc., alleges that they expended additional effort and costs to accomplish work that was not a part of the contract scope of work but a change to the contract directed by the USDA.

You are reminded that the standing seam metal roof under the contract was rejected due to non-conformance to the contract specifications. Work was suspended on the roof in March 2001 until such time that Alcon provided the Government the proper data regarding the wind load calculations, thermal movement calculations and the thermal clips as the roofing panels did not conform with contract specifications or shop drawings submittal. As of this date, the water problem continues to exist which could lead to additional mold growth. Additionally, the HVAC System was not working properly which caused moisture and condensation in the building that also contributed to mold growth as well as leaks in the deionized water (continuous) and the sprinkler systems.

As you are aware, the USDA has been documenting its concerns regarding the water intrusion and its affect on the interior finishes in the buildings prior to February 2001. This issue has been an ongoing daily dialogue between you and the USDA as well as a part of our monthly progress meetings since February 2001. The USDA's letters of April 25, June 8, and June 25, 2001, expressed and documented its concerns regarding the standing water, wet wallboard and mold formation problems in the building all due to roofing problems.

EXHIBIT 2

Administrative and Financial Management
5601 Sunnyside Avenue • Beltsville, MD 20705-5100

An Equal Opportunity Employer

To ensure the safety and health of the employees who will work in this facility, and to protect the Government's interest, in November 2001 and March 2002, we engaged the consultant services of Man Tech Environmental Corporation, now known as MECx, LLC Environmental Corporation, to conduct a follow-on survey of the mold problem.

As a result of the air sampling tests performed in the building, high mold spore counts were detected in all three of the wall cavities tested. The types of fungal spores identified in all three instances were high concentrations of Aspergillus, Penicillium, and Stachybotrys (toxic black mold). To assure us that there were no other areas of concern, we requested that additional wall cavities be sampled and tested to ensure that a reasonable effort had been made to identify all problem areas

After completion of all testing, we requested that the affected walls in all areas of high mold spore counts be removed under containment conditions, as Travelers' previous attempts to locate and repair the sources of the leaks had not been successful. Travelers' cutting out sections of the drywall with the mold growth had not rectified the problem because areas had been re wetted.

The Microbial Mold Remediation (Abatement) Plan submitted by Travelers (Alcon) was unacceptable and therefore rejected. The plan did not provide for a Certified Industrial Hygienist to monitor the abatement or a Government representative present during the abatement to ensure that all actions are performed properly. Travelers submitted no additional abatement plan to this office for approval.

The work plan forwarded to Travelers by our letter dated July 31, 2002, detailed how this problem could be remedied, it did not direct Travelers to perform as written. Travelers has the obligation, pursuant to the contract, to provide a complete, and usable, (suitable for both Research and Administrative operations) facility. In order to meet this contractual obligation, Travelers must remedy the mold problem.

As incorporated by reference in Section I of the contract, FAR Clause 52.246-12, Inspection of Construction, provides that, "The Contractor shall, without charge, replace or correct work found by the Government not to conform to contract requirements, unless in the public interest the Government consents to accept the work with an appropriate adjustment in contract price. The Contractor shall promptly segregate and remove rejected material from the premises."

Therefore, Travelers and its Agent, Alcon Associates, Inc., is not entitled to additional compensation for work caused as a result of their error in performing work out of sequence and or failure to comply with the contract terms and conditions. The costs incurred by Travelers for the inadequate environmental conditions under the contract would be the same costs regardless of the amount of mold found, and therefore as determined by the Government, shall bear all costs.

Mr. John Scarpellino 3

Based on the information enumerated above, your claim in the amount of $52,604.64 is denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $550,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision. The mailing address of the Board of Contract Appeals is as follows:

Board of Contract Appeals
U.S. Department of Agriculture
Room 2915 South Building
14th and Independence Avenue, SW
Washington, DC 20250-0601

Sincerely,

MARVA L. HUGGINS
Contracting Officer
Facilities Contracts Branch
Facilities Division